# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KURT W., SANDRA W., and E. W.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS<br><br>Case No. 2:19-cv-223<br><br>Judge Clark Waddoups |

Before the court is Defendants United Healthcare Insurance Company, Laboratory Corporation of America Holdings, and the Laboratory Corporation of America Holdings Medical Benefit Plan's motion to dismiss (ECF No. 8), which seeks to dismiss, or in the alternative stay, Plaintiffs' action. The motion has been fully briefed, and Defendants did not request a hearing on the same. (ECF No. 14). For the reasons stated herein, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff E. W. is the child of Plaintiffs Kurt W. and Sandra W. (Compl., ECF No. 2 at ¶ 1). At all times relevant to this action, Kurt W. was a participant in the Laboratory Corporation of America Holdings Medical Benefit Plan (the "Plan"), a self-funded employee welfare benefits plan administered by defendant Laboratory Corporation of America Holdings ("LabCorp") and for which defendant United Healthcare Insurance Company ("United") was the third-party claims administrator. *Id.* at ¶¶ 2–5. At all times relevant to this action, E. W. was a beneficiary of the Plan. *Id.* at ¶ 5.

1

E. W. is diagnosed with autism spectrum disorder, adjustment disorder, anxiety, and depression. *Id.* at ¶ 22. As E. W. grew into adolescence, he became increasingly isolated to the point that he stopped attending activities and school and failed to respond to therapeutic interventions. *Id.* at ¶¶ 11–25. E. W.'s psychiatrist and educational consultant recommended that he enroll in a residential treatment facility but that he first attend an outdoor behavioral health program to ease the transition into the facility. *Id.* at ¶ 25. On January 22, 2017, E. W. was admitted into Aspiro Academy, an outdoor behavioral health program. *Id.* at ¶¶ 6, 25, 26. Thereafter, on March 30, 2017, E. W. was admitted into Daniels Academy, a residential treatment facility for mental-health. *Id.* at ¶¶ 6, 25, 37.

By a letter dated June 1, 2017, United denied payment of E. W.'s treatment at Aspiro on the basis that Plaintiffs had failed to provide requested information. *Id.* at ¶ 27. Plaintiffs appealed the denial and requested copies of Plan documents. *Id.* at ¶¶ 28–29. United upheld the denial by a January 18, 2018 letter which stated that the treatment "did not meet the Optum Level of Care Guideline required to be followed in the member's behavioral health plan benefits" and that E. W. "was stable from a medical standpoint," as he was "not suicidal, homicidal, manic, aggressive, or psychotic," was "stable on his medicine," and "did not require 24-hour nursing care." *Id.* at ¶ 30. The letter also stated that "[w]ilderness therapy is not a covered service under [E. W.'s] plan." *Id.* United did not provide the Plan documents that Plaintiffs requested. Plaintiffs again appealed this decision and renewed their request for Plan documents. *Id.* at ¶¶ 32–35. United upheld the denial of E. W.'s treatment at Aspiro "based on Optum Level of Care Guidelines for Residential Treatment of Mental Health Disorders and the Optum Common Criteria and Clinical Best Practices for All Levels of Care Guidelines" and because E. W. was cooperative and "did not want to harm himself [or] others." *Id.* at ¶ 36.

By a letter dated April 21, 2017, United also denied payment of E. W.'s treatment at Daniels Academy from April 13, 2017 forward on the basis that E. W. "made progress and that his condition no longer meets Guidelines for further coverage of treatment in this setting" and that E. W. "does not need to be in a 24-hour care setting." *Id.* at ¶ 38. Plaintiffs appealed this denial and provided statements of E. W.'s providers recommending that he remain in the level of treatment he was receiving. *Id.* at ¶¶ 39–43. Plaintiffs also renewed their request for a copy of the Plan documents. *Id.* at ¶¶ 41, 44. By letter dated March 30, 2018, United upheld the denial on the basis that E. W.'s "condition no longer met Guidelines for further coverage of treatment in this setting" and because he "did not require 24 (twenty-four) hour nursing care." *Id.* at ¶ 45. Plaintiffs again appealed this denial, and again requested Plan documents. *Id.* at ¶¶ 47–51. United upheld the denial by a letter dated June 8, 2018 on grounds already provided in the prior March 30, 2018 letter. *Id.* at ¶ 45. Defendants never provided the Plan documents. *Id.* at ¶ 83.

Plaintiffs filed this action on April 3, 2019, alleging that Defendants violated ERISA and the Mental Health Parity Act ("the Parity Act") by denying coverage for E. W.'s treatment. Plaintiffs seek an order requiring Defendants to pay for the cost of E. W.'s treatment, and statutory penalties, and varied equitable releif. Kurt W. and Sandra W. have incurred expenses in excess of $170,000.00 for E. W.'s treatment. *Id.* at ¶ 55.

## **DISCUSSION**

Defendants' motion to dismiss asks the court to: 1) dismiss, or in the alternative stay, Plaintiff's action because E. W. is a member of a plaintiff class in a pending class action premised on the same facts and claims; 2) dismiss Plaintiffs' claim under the Party Act; and 3) dismiss Kurt W. and Sandra W.'s claims for lack of standing. Each of these requests will be discussed in turn.

**I. Plaintiffs' participation in the *Wit* class action does not require this action to be dismissed or stayed.**

Defendants first argue that Plaintiffs' action should be dismissed, or in the alternative stayed, because E. W. is a member of the plaintiff class in a class action lawsuit pending in the Northern District of California, *Wit v. United Behavioral Health*, and "'members of [a] plaintiff class in class action cannot bring separate individual action premised on same grounds as pending class action.'" *Cimino v. Perrill*, 153 F.3d 726 (10th Cir. 1998) (citing *Rivarde by Rivarde v. State of Missouri,* 930 F.2d 641, 643-45 (8th Cir.1991)). Even if the court accepts that this principle is "well-established in this Circuit," it does not find that it governs here, as Plaintiffs' action is not premised on the "same grounds" as *Wit*.

Here, Plaintiffs allege that Defendants breached their fiduciary duty to E. W. in violation of ERISA by denying E. W.'s care at Aspiro Academy and Daniels Academy; violated the Parity Act by requiring E. W. to satisfy acute care medical necessity criteria in order to obtain coverage for residential treatment at Aspiro Academy and Daniels Academy; violated the Parity Act by applying processes, strategies, and etc. to limit coverage for mental health treatment more stringently than coverage than medical/surgical treatment; and violated ERISA by failing to produce to them copies of Plan documents. (*See* Compl., ECF No. 2 at ¶¶ 59, 65–67, 69–71).

The *Wit* class action, on the other hand, only involves claims of "alleged wrongful denial of coverage for one type of provider of substance abuse and mental health treatment" and "does not reference or contain any causes of action under the Parity Act" or "involve any denials of coverage for outdoor behavioral health programs." *See Michael W. v. United Behavioral Health*, No. 2:18-cv-818, 2019 WL 4736937, at 11–13 (D. Utah Sept. 27, 2019).[1] *Id.* at 11–13.

---

[1] The defendants in the *Michael W.* case also moved to dismiss the plaintiffs' complaint on the basis that the plaintiffs were members of the plaintiff class in *Wit*. While the defendants there based their argument on theories of

Thus, only Plaintiffs' claim that Defendants breached their fiduciary duty by denying coverage for treatment at Daniels Academy overlaps with the claims at issue in *Wit*. Because the majority of Plaintiffs' claims are wholly unrelated to the issues raised in *Wit*, the two cases are not premised on the "same grounds," and Plaintiffs are therefore not barred from proceeding on their claims in this action.

**II. Kurt W. has standing to pursue his individual claims, but Sandra W. does not.**

Defendants next argue that the individual claims of Kurt W. and Sandra W. should be dismissed for lack of both statutory and constitutional standing. Under 29 U.S.C. § 1132(a)(1), a "participant" of a plan has statutory standing to bring civil actions "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiffs allege that at all relevant times, Kurt W. was a participant of the Plan. (*See* Compl., ECF No. 2 at ¶ 5). As such, Kurt W. "has standing to bring a civil action to enforce his rights under the terms of an ERISA plan or to enforce ERISA's provisions." *Alexander v. Anheuser-Busch Companies, Inc.*, 990 F.2d 536, 538 (10th Cir. 1993) (citation omitted).

Plaintiffs rely on 29 U.S.C. § 1132(a)(3) as the basis for Sandra W.'s statutory standing, asserting that because she had a legal obligation to pay for E. W.'s treatment, she is a "fiduciary" and therefore able to bring this action. Plaintiffs' argument overlooks ERISA's definition of a "fiduciary" as a person who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of [a plan's] assets," who "renders investment advice for a fee . . . with respect to any moneys or other property of such plan . . ." or who "has any discretionary authority or

---

*res judicata* and the "first-to-file" rule, and not *Cimino*, this distinction is immaterial to Judge Parrish's analysis and interpretation of the issues presented in *Wit*.

discretionary responsibility in the administration of such plan." Sandra W. does not meet this definition and therefore does not have statutory standing to bring claims under ERISA. Sandra W.'s claims are therefore **DISMISSED**.

"The constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is 'concrete and particularized' and 'actual or imminent.' Second, a causal connection must exist between the injury and the conduct complained of; the injury must be fairly traceable to the challenged action. Third, it must be likely that the injury will be redressed by a favorable decision." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996).

Kurt W. and Sandra W. allege that they have incurred over $170,000.00 in medical expenses as a result of Defendants' denying coverage for E. W.'s treatment. This allegation satisfies the first two elements of constitutional standing—that Plaintiffs were injured and that Defendants caused the injury. *See e.g.*, *Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*, No. 1:12-cv-285, 2014 WL 585710, at *3 (D. Idaho Feb. 14, 2014) (finding that plaintiff's claim that she "paid out a significant amount of money for medical expenses incurred by [her dependent] that she claims should be covered by the Plan . . . established an injury-in-fact that is likely to be redressed if she prevails in this action"); *Wills v. Regence Bluecross Blueshield of Utah*, No. 2:07-cv-616, 2008 WL 4693581, at *1 (D. Utah Oct. 23, 2008); *Michael W.*, 2019 WL 4736937, at *7. Finally, if Kurt W. and Sandra W. prevail on their action, and particularly their claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), their asserted injury will be redressed, as Defendants will be required to pay them the $170,000.00 they have incurred as a result of Defendants' denial of coverage. Kurt W. and Sandra W. have therefore established that they have constitutional standing to assert their claims.

### III. Defendants' motion to dismiss Plaintiffs' claim under the Parity Act is granted, but Plaintiffs are granted leave to amend their Complaint.

Plaintiffs claim that Defendants violated the Parity Act by limiting coverage for mental health or substance use disorder treatment more stringently than coverage for analogous medical or surgical treatment and by imposing acute medical necessity criteria to sub-acute residential mental health treatment but not to sub-acute medical or surgical treatment. (*See* Compl., ECF No. 2 at ¶¶ 65–67). Defendants argue that Plaintiffs' claim is insufficiently pled and should therefore be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have not: 1) identified a specific plan limitation on residential treatment for behavioral health conditions; 2) adequately pled a covered medical or surgical service that is analogous to residential treatment; or 3) pled fact identifying a disparity in the limitation criteria applicable to residential mental health treatment as compared to that applicable to an analogous medical or surgical service.[2]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In assessing Defendants' motion, this court must "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most

---

[2] This court has recognized that to succeed on their Parity Act claim, a plaintiff must show: "(1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared." *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-803, 2019 WL 4393341, at *4 (D. Utah Sept. 13, 2019). Although Defendants do not cite to this test, their attacks can be read as focusing on the third and fourth elements of Plaintiffs' Parity Act claim.

favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

        A.    <u>Plaintiffs are not required to plead a specific plan limitation in order to state a claim for violation of the Parity Act.</u>

Defendants argue that Plaintiffs' Parity Act claim fails because Plaintiffs have not identified a specific plan limitation that applies only to benefits for mental health residential treatment. Defendants further assert that no such limitation exists, as the Plan's criteria requiring treatment to be medically necessary, and its exclusion of treatment that is "not medically necessary," applies to all coverage, not just to residential mental health treatment.

Violations of the Parity Act need not be express. Rather, "disparate treatment limitations that violate the Parity Act can be either *facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan)." *Peter E. v. United HealthCare Servs., Inc.*, No. 2:17-cv-435, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (emphasis in original). As such, under the Act, unequal or discriminatory application of a plan's facially neutral limitations is illegal. *See Anne M. v. United Behavioral Health*, No. 2:18-CV-808, 2019 WL 1989644, at *2 (D. Utah May 6, 2019) ("Under an as-applied challenge, a plaintiff may 'allege an impermissible mental-health exclusion "in application"—as opposed to a facial attack relying solely on the terms of the plan at issue.'" (quoting *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1081–82 (W.D. Wash. 2018))); *see also Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1176 (D. Utah 2019). As such, Plaintiffs' Parity Act claim, and specifically its allegation that the Defendants inconsistently applied criteria to limit or exclude residential mental health treatment, does not fail simply because they have not pointed to a specific plan limitation that only applies to residential mental health treatment.

B. <u>Plaintiffs have adequately identified a covered medical or surgical service that is analogous to the treatment that E. W. received.</u>

Defendants next argue that Plaintiffs' Parity Act claim should be dismissed because Plaintiffs have failed to identify a medical or surgical treatment that is analogous to the residential mental health treatment for which E. W. received and was denied coverage. Plaintiffs' Complaint alleges that the treatment E. W. received at Aspiro Academy and Daniels Academy is analogous to medical or surgical services offered at "skilled nursing or rehabilitation facilities." (Compl., ECF No. 2 at ¶¶ 32, 65). Defendants argue that these allegations are unsupported and conclusory and are therefore insufficient to establish the necessary elements of Plaintiffs' claims under the Parity Act. The court disagrees.

The Final Rules under the Parity Act state, in no uncertain terms, that "[b]ehavioral health intermediate services are generally categorized in a similar fashion as analogous medical services; for example, residential treatment tends to be categorized in the same way as skilled nursing facility care in the inpatient classification" and that "if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit." 78 Fed. Reg. 68247 (Nov. 13, 2013). As such, Plaintiffs' allegations are not conclusory; they are an accurate recitation of the law. *See E. M. v. Humana*, No. 2:18-cv-789, 2019 WL 4696281, at *3 (D. Utah Sept. 26, 2019) (citing *B.D. v. Blue Cross Blue Shield of Georgia*, No. 1:16-cv-99, 2018 WL 671213, at *4 (D. Utah Jan. 31, 2018) (citations omitted)). Applying these rules, the court finds that Plaintiffs' Complaint adequately identifies a medical or surgical treatment that is analogous to the residential mental health treatments E. W. received at Aspiro Academy and Daniels Academy.

While this court has previously recognized that "there is no clear surgical analog" to the outdoor behavioral and mental health treatment programs offered at Aspiro Academy, the basis that Defendants gave for denying E. W.'s care absolves the court of having to find such an analogy in this case. *See Michael D.*, 369 F. Supp. 3d at 1175. Defendants' January 18, 2018 denial letter states that E. W.'s treatment at Aspiro Academy was denied because her "condition did not meet Guidelines for coverage of treatment in this setting."[3] (Compl., ECF No. 2 at ¶ 30). The "Guidelines" that Defendants applied were those for a "mental health residential treatment center." *Id.* Because Defendants treated the outdoor behavioral and mental health treatment programs offered at Aspiro Academy just as it would any other residential mental health treatment, it follows that a medical or surgical treatment that is analogous to residential mental health treatment would also be analogous to that outdoor behavioral health treatment. Plaintiffs' Complaint therefore adequately identifies medical or surgical treatments—skilled nursing or rehabilitation facilities—that are analogous to the treatment E. W. received at Aspiro Academy and Daniels Academy.

      C.    <u>Plaintiffs are entitled to obtain Plan documents from Defendants and should use the information contained therein to amend their Complaint to cure the ambiguities in their Parity Act claim.</u>

Defendants' final attack on Plaintiffs' Parity Act claim is that it does not include a comparison of the limits allegedly imposed on residential mental health treatments and those on medical or surgical treatments. As discussed above, Plaintiffs' Complaint presents an "as-applied challenge" premised on their allegations that Defendants limit coverage for mental health

---

[3] The denial letter also stated that E. W.'s treatment was denied because wilderness therapy "is not a covered service under the member's heath plan." (Compl., ECF No. 2 at ¶ 30). While the court has concerns over the propriety of this blanket exclusion, *see Michael D.*, 369 F. Supp. 3d at 1175, Defendants' alternative justification for denial, that the treatment was not justified under the care guidelines for mental health residential treatment centers, provides sufficient grounds for the court to find that Plaintiffs have set forth a plausible violation of the Parity Act.

treatment more strictly than they do medical or surgical treatment and impose acute medical necessity criteria to sub-acute residential mental health treatment but not to sub-acute medical or surgical treatment. To prevail on this claim, Plaintiffs must analyze the guidelines and limitations that Defendants place on coverage for sub-acute medical or surgical treatment and compare them to the guidelines and limitations placed on analogous sub-acute residential mental health treatment. Plaintiffs Complaint fails to present such an analysis.

Rather, Plaintiffs' allegations that Defendants violated the Parity Act are ambiguous. Defendants argue this is grounds for dismissal. The court agrees but also finds that it is grounds for Plaintiffs to be given leave to amend their Complaint, as it is by no fault of Plaintiffs' that their claim is ambiguous. Plaintiffs repeatedly requested "the Plan's criteria for skilled nursing and rehabilitation facilities," from Defendants, but Defendants failed to honor Plaintiffs' requests and produce those documents. (Compl., ECF No. 2 at ¶¶ 29, 31, 35, 44, 51, 53). Plaintiffs are entitled to that information pursuant to 29 C.F.R. § 2590.712(d) (2019). Plaintiffs may also be missing, and entitled to, other pertinent information that will help them more fully develop their claims in this action.

Plaintiffs cannot be expected to plead facts that are in the possession of Defendants, and they will certainly not be punished for not offering those facts when their repeated requests to learn the same have been ignored. Facing a nearly identical situation, this court has determined that "[w]ithout knowing the criteria [the insurer] relies on to evaluate the analogue to [plaintiff's child's] claim for coverage, the Court cannot expect [plaintiff] to allege the nonquantitative treatment limitations [the insurer] applied to those other services with specificity. To require more would prevent any plaintiff from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled nursing

11

facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards." *Melissa P. v. Aetna Life Ins. Co.*, No. 2:18-cv-216, 2018 WL 6788521, at *3 (D. Utah Dec. 26, 2018). The court agrees and refuses to penalize Plaintiffs for not offering facts that are beyond their reach. As such, and in the interest of resolving this case, the court **DISMISSES** Plaintiffs' Parity Act claim but grants Plaintiffs **LEAVE TO AMEND** their Complaint and orders the following:

Within ten days of the entry of this order, Plaintiffs will submit to the court a list of the information they request from Defendants so that they have what they need to fully develop their claims. The court will reduce those requests to an order directing Defendants to provide the requested information. Defendants will thereafter have one week from the date of the order to either provide the requested information to Plaintiffs or to object to the request if they believe that it exceeds what Plaintiffs are entitled to receive. After Plaintiffs receive the materials from Defendants, they will have 30 days to file an amended complaint that cures the ambiguities of their current complaint by offering a fully developed, and well pled, claim under the Parity Act.

### IV. Plaintiffs' claims under the Parity Act are distinct.

Finally, Defendants move to dismiss Plaintiffs' claims for equitable relief under 29 U.S.C. § 1132(a)(3) because they are wholly subsumed within Plaintiffs' first cause of action for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). While Plaintiffs' claim under § 1132(a)(1)(B) seeks to recover the benefits due to them under the Plan, namely the $170,000.00 they have incurred in medical expenses, their claims under § 1132(a)(3) alleges violations of the Parity Act and seeks, among other things, "[a]n injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute; "[a]n order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants . . . and "an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries

12

of the Plan and United insured plans as a result of the Defendants' violations of MHPAEA." (*See* Compl., ECF No. 2 at ¶ 68). Such requests are not subsumed within Plaintiffs' request for payment of benefits. Rather, they are precisely the type of "other appropriate equitable relief" that ERISA permits Plaintiffs to obtain. *See* 29 U.S.C. § 1132(a)(3).

Defendants argue that pursuant to *Varity Corp. v. Howe*, 516 U.S. 489 (1996), Plaintiffs cannot seek equitable relief under 29 U.S.C. § 1132(a)(3) because they have not "plausibly allege[d] that no other available remedy could redress their alleged injury (here, the denial of benefits)." (ECF No. 8 at 22). Defendants "misinterpret the import of *Varity Corp.* on the Plaintiffs' Parity Act claims and excise key language from the passage they cite from that case." *Michael W.*, 2019 WL 4736937, at *12, n. 9. In *Varity Corp*, the Supreme Court "observed that the structure of ERISA 'suggests that these "catchall" provisions' such as [29 U.S.C. § 1132(a)(3)], '*act as a safety net*, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy.'" *Id.* (quoting *Varity Corp.*, 516 U.S. at 512). As such "rather than functioning as a bar to Plaintiffs' claims, as Defendants argue, the *Varity Corp.* opinion recognizes that [29 U.S.C. § 1132(a)(3)] may be used to pursue claims for equitable relief that are not available in other sections of ERISA." *Id.* Plaintiffs' § 1132(a)(3) claims for equitable relief for violations of the Parity Act are distinct from their § 1132(a)(1)(B) claims for denial of benefits "in terms of the nature of the alleged harm, the theory of liability, the ERISA enforcement mechanism, and the relief sought." Plaintiffs are therefore not barred from asserting these distinct claims in concert. *See id.*

## CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED IN PART AND DENIED IN PART**. Defendants' request to dismiss, or in the

alternative stay, Plaintiffs' action is **DENIED**.  Defendants' request to dismiss Kurt W.'s individual claims is **DENIED**.  Defendants' request to dismiss Plaintiffs' claims under the Parity Act is **GRANTED**, but Plaintiffs are **GRANTED LEAVE TO AMEND** their Complaint as set forth in Section III.C., above.  Defendants' request to dismiss Sandra W.'s individual claims is **GRANTED**.

Dated this 12th day of December, 2019.

BY THE COURT:

_(signature)_

Clark Waddoups
United States District Judge